IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| FLYPSI, INC. (D/B/A FLYP), <br><br> Plaintiff, <br><br> v. <br><br> DIALPAD, INC., <br><br> Defendant. | Civil Action No. 6:21-cv-642-ADA <br><br> JURY TRIAL DEMANDED |

**DEFENDANT DIALPAD, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

**INTRODUCTION**

The four related patents[1] asserted in this case claim a method for routing telephone calls using multiple telephone numbers for a mobile device or handset.

Defendant Dialpad, Inc. ("Dialpad") submits two disputed terms for construction. Plaintiff Flypsi, Inc. ("Flypsi") has proposed undefined "plain and ordinary meaning" for all language in the claims. Neither party has submitted extrinsic evidence in the form of expert declarations on the meaning of claim terms. Dialpad has also identified two claim terms appearing in each of the asserted independent claims as indefinite.

---

[1] The patents are attached as Exhibit 1 (U.S. Patent No. 9,667,770 (the '770 patent)), Exhibit 2 (U.S. Patent No. 10,051,105 (the '105 patent)) and Exhibit 3 (U.S. Patent No. 10,334,094 (the '094 patent)), each of which is titled "Telephone Network System and Method." Exhibit 4 (U.S. Patent Nos. 11,012,554) is titled "Telephone Network System and Methos" [*sic*]. Collectively these "Asserted Patents" share a common specification and are "continuations" with respect to each other. The '770 patent is a continuation in part of an earlier filed patent application, U.S. Patent App. No. 13,944,853, now abandoned.

## TABLE OF CONTENTS

Page

I. BACKGROUND OF THE ASSERTED PATENTS ........................................................... II

II. ARGUMENT .................................................................................................................... 2

    A. Legal Standard for Claim Construction ............................................................... 2

    B. Patent Terms ......................................................................................................... 4

        1. "primary telephone number" ..................................................................... 4

        2. "voice channel" ......................................................................................... 5

        3. The terms "switch" and "associated with" in the independent claims are indefinite ................................................................................ 5

            a. The "switch" and corresponding "associated with" functionality are indefinite under means plus function analysis ........................................................................................ 7

                i. "Switch" does not have a definite meaning for structure ............................................................................. 7

                ii. The specification does not sufficiently disclose corresponding structure ................................................... 9

            b. The "switch" and its "associated with" functionality is indefinite .................................................................................... 9

III. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ....................................................................2, 3, 4

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015)..............................................................................................3, 7

*Boston Scientific Corp. v. Johnson & Johnson*,
 647 F.3d 1353 (Fed. Cir. 2011)..................................................................................................3

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
 598 F.3d 1336 (Fed. Cir. 2010)..................................................................................................3

*Genentech, Inc. v. Novo Nordisk A/S*,
 108 F.3d 1361 (Fed. Cir. 1997)..................................................................................................3

*In re Wright*,
 999 F.2d 1557 (Fed. Cir. 1993)..................................................................................................3

*Nat'l Recovery Tech., Inc. v. Magnetic Separation Sys.*,
 166 F.3d 1190 (Fed. Cir. 1999)..................................................................................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 134 S. Ct. 2120 (2014)....................................................................................................4, 9, 10

**Statutes**

35 U.S.C. § 112(f)..........................................................................................................................3, 7

35 U.S.C. § 112(a) .......................................................................................................................3, 10

35 U.S.C. § 112(b) .........................................................................................................................4, 9

**Other Authorities**

Newton's Telecom Dictionary .......................................................................................................7, 10

I.      **BACKGROUND OF THE ASSERTED PATENTS**

Flypsi has asserted only method claims. For the '770 and '105 patents, the independent claims are directed to *inbound* calls to a mobile device or handset. For the '094 and '554 patents, the independent claims are directed to *outbound* calls.

The claimed "method of providing telephone service" uses a data channel with a handset or mobile phone to set up inbound and outbound calls. '770 patent at 10:65-66; Abstract; Figure 3; 4:5-12, 35-40. The method uses a voice channel with the handset or mobile device to place and carry voice calls. *Id*. at Abstract; Figure 3; 1:45-50; 4:40-46. A mobile device or handset has a primary telephone number and one or more secondary telephone numbers from which calls appear to have been made. *Id*. at Abstract, Figure 2; 1:52-56. Various telephone numbers associated with each mobile phone or handset (a primary telephone number and one or more secondary telephone numbers, bridge telephone numbers and contact telephone numbers) are used in call routing according to call processing rules. *Id.* at 6:5-7.

The overall method is described with reference to the Public Switched Telephone Network, Mobile Telephone Networks and a mobile device as shown in Figure 3, reproduced below.



FIG. 3

## II. ARGUMENT

### A. Legal Standard for Claim Construction

To define the claims, courts first consider the intrinsic evidence: the claims themselves, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (*en banc*). Claim terms are generally construed according to their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Id.* at 1312–13. Extrinsic evidence (including, for example, technical

dictionaries and treatises) may shed light on the meaning claim terms would have to one of ordinary skill in the art. *Id.* at 1318.

An element in a claim "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f). "Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke § 112, para. 6 [AIA § 112(f)]." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (quotation omitted). If the specification fails to disclose adequate corresponding structure for a means-plus-function term, the term is indefinite. *Id.* at 1351-52.

35 U.S.C. §112 (a) requires that the specification contain a written description of the invention. "[T]he hallmark of written description is disclosure." *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361-62 (Fed. Cir. 2011) (citation omitted). The test for whether a specification adequately describes an invention is "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date . . . . [T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art . . . . [It] is a question of fact." *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*); *Boston Scientific*, 647 F.3d at 1362.

35 U.S.C. § 112 (a) also requires that the patent specification enable "those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). "[T]he scope of the claims must be less than or equal to

3

the scope of the enablement." *Nat'l Recovery Tech., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999).

Claims are indefinite under 35 U.S.C. § 112 (b) when they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

**B.     Patent Terms**

Dialpad addresses the following claim terms in dispute that the parties have identified for construction:

   1.     **"primary telephone number"**

   **'770 Patent claim 1, 4**
   **'105 Patent claims 1, 2, 10 and 11**
   **'094 patent claims 1**
   **'554 patent claims 1**

| Dialpad's Proposed Construction | Flypsi's Proposed Construction |
|---|---|
| A telephone number or identifier that is assigned to a handset or mobile device at activation. | Undefined plain and ordinary meaning. |

The term "primary telephone number" means "a telephone number or identifier that is assigned to a handset or mobile device at activation." This definition is most consistent with the claim language and the specification as discussed below. *See Phillips at* 415 F.3d 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

4

In the context of the claims, the primary telephone number is described as being assigned or associated with a handset. '770 patent at 10:3-4; '094 Patent at 9-11. The specification indicates that "[t]he primary telephone number, preferably, may be a SIM number or ESN which is assigned to the handset 340 at the time of activation." '770 Patent at 5:2-4. Secondary telephone numbers, by contrast, permit "the same handset to be associated with multiple secondary telephone numbers from which calls appear to have been made and to which calls appear to have been placed." *Id.* at Abstract.

Without this construction, it would be difficult or impossible to distinguish a primary telephone number from a secondary telephone number.

### 2. "voice channel"

'770 Patent claim 1, 4, and 6
'105 Patent claims 1, 2, 4, 5 and 8

| Dialpad's Proposed Construction | Flypsi's Proposed Construction |
|---|---|
| A communications path used for voice information and voice calls. | Undefined plain and ordinary meaning. |

The term "voice channel" means "a communications path used for voice information and voice calls." This definition is consistent with the plain meaning of the language and the specification. The Asserted Patent specifications provide that "communications, when used to carry voice information, are referred to herein as being conducted over a "voice channel." '770 Patent at 4:43-46. The Asserted Patent specifications also provide that the voice channel handles calls:

- "incoming and outgoing calls, which are ultimately connected using a voice channel." *Id.* at Abstract, and

- "If the call is accepted in step 414, however, the handset application may automatically cause the handset 340 to call the bridge telephone number in step 422 over a voice channel." Id. at 6:62-65.

By contrast, the data channel carries call handling and other information that facilitate setting up calls using the voice channel. *See Id.* at Abstract ("A data channel connection with the telephone handset may provide pre-call information to set up incoming and outgoing calls which are ultimately connected using a voice channel."

### 3. The terms "switch" and "associated with" in the independent claims are indefinite

'770 Patent Clam 1
'105 Patent Claims 1, and 2
'994 Patent Claim 1
'554 Patent Claim 1

| Dialpad's Proposed Construction | Flypsi's Proposed Construction |
|---|---|
| Indefinite. | Undefined plain and ordinary meaning. |

In the context of the claims, the term "switch" appears in a functional way as "associated with" various aspects of the telephone service method. The term switch and its associations render the claim indefinite for two reasons discussed below.

### a. The "switch" and corresponding "associated with" functionality are indefinite under means plus function analysis.

A patentee may express a claim term using functional language. See 35 U.S.C. § 112(f); Williamson, 792 F.3d at 1347–49 & n.3 (en banc in relevant portion). Specifically, section 112(f) provides that a structure may be claimed as a "means . . . for performing a specified function," which is "construed to cover the corresponding structure, material, or acts described in the specification." If the claim language does not include the word "means," a relatively weak rebuttable presumption arises that the functional term is not a means-plus-function term. Williamson, 792 F.3d at 1349. This presumption against means-plus-function interpretation is rebuttable if a challenger demonstrates that the language of the claim fails to "recite sufficiently definite structure" or discloses a "function without reciting sufficient structure for performing that function." *Id*.

In the absence of a definite meaning for structure, the term "switch" and its "associated with" functional language would be given a means-plus-function interpretation, taking into account structure within the specification that corresponds to the functional language. If structure is not disclosed, then the element is indefinite.

#### i. "Switch" does not have a definite meaning for structure

The term "switch" in Newton's Telecom Dictionary is defined to mean "a mechanical, electrical or electronic device which opens or closes circuits, completes or breaks an electrical path, or selects paths or circuits." *See* Exhibit 5 (Dialpad Extrinsic Evidence). This broad range of possible structure highlights the lack of a definite structure for switch. It is a conceptual term for categories of functionality.

In the context of the asserted claims, which are all methods of providing telephone service, the switch is not specified to be part of the PSTN or wireless network, nor is it specified

7

to not be part of the PSTN or wireless network.  The functions of switch recited in the independent patent claims are:

- "receiving an incoming call over at least one voice channel at a switch, **the switch being associated with** a bridge such that calls directed to the bridge telephone number are automatically routed to the switch, … accepting the incoming call by connecting with the switch over the at least one voice channel using the bridge telephone number." Claim 1 of '770 Patent.

- "said electronic indication of an incoming call being received from **a switch associated with** the server;… said pre-call information including a bridge telephone number for connecting the handset to the incoming call at the switch;… establishing a voice channel connection between the handset and the switch as a result of the handset calling the switch using the bridge telephone number." Claim 1 of '105 Patent.

- "in response to an incoming call to the secondary telephone number received by a switch,… wherein the first bridge telephone number is **associated with the switch** such that calls to the first bridge telephone number are automatically routed to the switch;… using the first bridge telephone number to connect the incoming call to the telephone handset via the switch." Claim 2 of '105 Patent.

- "receiving, at **a switch associated with the server**, an outgoing call from the handset to the bridge or access telephone number via a second channel; receiving, at the server, information from the switch indicating the outgoing call is being made to the bridge or access telephone number from the primary telephone number; and receiving, at the switch, information from the server directing the switch to: (a) connect the outgoing call to a contact telephone number associated with the primary telephone number and bridge or access telephone number pairing, and (b) identify a telephone number from which the outgoing call is being made as the secondary telephone number." Claim 1 of '094 Patent.

- "automatically **associating the telephone access number with a switch associated with the server**; receiving, at the **switch associated with the server**, an outgoing call from the mobile device to the access telephone number via a second channel; receiving, at the server, information from the switch indicating the outgoing call is being made to the access telephone number from the primary telephone number; and receiving, at the switch, information from the server directing the switch to: (a) connect the outgoing call to a contact telephone number indicated by the mobile device, and (b) identify a telephone number from which the outgoing call is being made as the secondary telephone number." Claim 1 of '554 Patent.

          **ii.**       **The specification does not sufficiently disclose corresponding structure**

The structures in the specification corresponding to the functions of the switch are the element 110, variously referred to as a "telecommunications switch 110" (*See* '770 Patent 4:16-17) or a "server 110" (*See Id*. at 7:13), or the Public Switched Telephone Network 310. In the figures, the element 110 appears as an unlabeled box in Figure 1. Element 110 also appears as a "Telecom Switch" as part of a "network layer" 101 within a "telephone network automated structure" that is shown connected to the Public Switched Telephone Network. In Figure 6, the term "switch" appears in a box labeled "Application Server and Switch."

There is no disclosure of structure or an algorithm for the claimed switch to be functionally **associated with** a bridge or a server for call routing. Particularly where the claims make no reference to whether the claimed "telephone service" includes and encompasses the PSTN, or does not use and is outside of the PSTN, there is not enough particularity in the claim language to understand where the associations to permit call routing lie, or what those associations are, nor is there corresponding structure or an algorithm in the specification. Accordingly the claims are indefinite.

      **b.**      **The "switch" and its "associated with" functionality is indefinite**

In *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court rejected the long-standing Federal Circuit test for determining whether a patent claim meets the "definiteness" standard of 35 U.S.C. § 112 (b). 134 S. Ct. 2120, 2124 (2014). Under the Federal Circuit test rejected by the Court, a claim was sufficiently definite to meet the statutory requirement if it was "amenable to construction" and not "insolubly ambiguous." In *Nautilus*, the Supreme Court unanimously held that the proper test is whether the patent claims, "read in light of the specification . . . and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the

scope of the invention." *Id*. Furthermore, 35 U.S.C. §112 (a) requires that the specification contain a written description of the invention.

Each of the independent Asserted Patent claims claims a "method of providing a telephone service" that includes a switch and a server and various associations of the switch that are supposed to enable call routing. However, the patent specification includes many more elements than a switch and a server for call routing. There is a Public Switched Telephone Network 310, a mobile network 313, a mobile switching center 314 and many other elements for routing wireless calls. However, none of this infrastructure is claimed in the asserted method claims. Nor is there a reference to PSTN call routing. Instead, the patents claim a disembodied "switch" that is "associated with a server" and that is "associated with a bridge."

The "associated with" functions of switch are recited above in the prior section. There is a questions of where within the telephone service the associates are made, what are the associations, and how are they maintained? The claims provide no information. Without claim language indicating whether the claimed "telephone service" includes and encompasses the PSTN, or does not use or encompass the PSTN, there is no point of reference in the claims as to where switch routing happens or where the relevant associations are made or maintained.

The term "switch" is defined in Newton's Telecom Dictionary to mean "a mechanical, electrical or electronic device which opens or closes circuits, completes or breaks an electrical path, or selects paths or circuits." *See* Exhibit 5 (Dialpad Extrinsic Evidence). This provides a broad range of possibilities.

The specification refers to a switch element 110, variously as a "telecommunications switch 110" (*See* '770 Patent 4:16-17) or a "server 110" (*See Id*. at 7:13). It also refers to the Public Switched Telephone Network 310 and a Mobile Switching Center 314. In the figures, the

element 110 appears as an unlabeled box in Figure 1. Element 110 also appears as a "Telecom Switch" as part of a "network layer" 101 within a "telephone network automated structure" that is shown outside the Public Switched Telephone Network. Plaintiffs provided a definition of Telecom Switch as "[a] large scale computer used to route telephone calls in a central office." Exhibit 6 (Plaintiff's Extrinsic Evidence, Telephone Switch and Telco Switch definitions). This begs the question, should the switch be a large scale central office switch, or a mechanical switch, or what type of switch? Where is the switch itself located and how are the above associations made or maintained in order to provide switch routing of the claimed telephone service?

The claims themselves are not helpful on what the nature of the switch is, and the specification is similarly not helpful. There is also a lack information regarding what the nature of the switch associations are and how they are made or maintained. Particularly where the claims make no reference to whether the claimed "telephone service" includes and encompasses the PSTN, or does not use or encompass the PSTN, in an infringement analysis, there is not enough particularity in the claim language to understand what the switch is, what the associations are, and how they each fit into the claimed telephone service.

Accordingly, the claims of the asserted patents fail to particularly point out and distinctly claim the invention, and are invalid as indefinite.

### III.   CONCLUSION

For the foregoing reasons, Dialpad's claim constructions should be adopted.


Dated:  December 10, 2021                        /s/ *Elizabeth M. Chiaviello*
                                                 Elizabeth M. Chiaviello
                                                 Texas Bar No. 24088913

elizabeth.chiaviello@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201-7347
T. (214) 466-4000
F. (214) 466-4001

Robert C. Bertin*
D.C. Bar No. 469582
robert.bertin@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
*Admitted pro hac vice
Attorneys for Dialpad, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on December 10, 2021, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello
