**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FLYPSI, INC. (D/B/A FLYP),** | § | |
| *Plaintiff* | § | |
| | § | |
| -vs- | § | **6:21-CV-0642-ADA** |
| | § | |
| **DIALPAD, INC.,** | § | |
| *Defendant* | § | |
| | § | |

## ORDER ON PLAINTIFF FLYPSI, INC.'S MOTION TO DISMISS AND STRIKE DEFENDANT'S INEQUITABLE CONDUCT COUNTERCLAIM AND DEFENSE

Came on for consideration this date is Plaintiff Flypsi, Inc.'s ("Plaintiff" or "Flyp") Motion to Dismiss and Strike Defendant's ("Defendant" Or "Dialpad") Inequitable Conduct Counterclaim And Defense. ECF No. 38 (the "Motion"). Plaintiff filed the Motion on February 8, 2022. Defendant filed its Response in Opposition to Plaintiff's Motion on February 22, 2022. ECF No. 39. Plaintiff filed its Reply on March 1, 2022. ECF No. 42. After careful consideration of the briefing and arguments, the Court **GRANTS** Plaintiff's Motion to Dismiss and Strike Defendant's Inequitable Conduct Counterclaim and Defense, ECF No. 38.

## I.      BACKGROUND

Flyp, a Delaware corporation with its principal place of business in Bedford, Texas, filed suit on June 21, 2021, against Dialpad, also a Delaware corporation with its principal place of business in Austin, Texas. ECF No. 1 ¶¶ 1–2. Flyp's Original Complaint alleged that Dialpad has and continues to infringe, contribute to the infringement of, and/or induce infringement of Flyp's U.S. Patent Nos. 9,667,770 (the "'770 Patent"), 10,051,105 (the "'105 Patent"), 10,334,094 (the "'094 Patent"), and 11,012,554 (the "'554 Patent") (collectively, the "Asserted Patents"). *Id.* at ¶¶ 16, 26, 36, 49.

Dialpad filed its Original Answer and Counterclaims to Flyp's Original Complaint on August 13, 2021, denying the allegations and alleging counterclaims for declaratory judgment on the '770, '105, '094, and '554 Patents. ECF No. 14 ¶¶ 16, 26, 36, 49, 12, 17, 25, 31, 38, 45, 52, 58. In each of its counterclaims, Dialpad asked the Court to declare that it had not infringed any of the Asserted Patents and that each patent was invalid. *Id.* at ¶¶ C–J.

On November 5, 2021, Dialpad served Flyp with invalidity contentions in accordance with the Court's scheduling order. ECF No. 38 at 2. Two business days after receiving the contentions, Flyp submitted a Request for Continued Examination of U.S. Patent No. 11,218,585 (the "'585 Patent") along with an Information Disclosure Statement listing the invalidity references cited by Dialpad. ECF No. 38 at 2; ECF No. 38-2. A few weeks later the examiner issued a new Notice of Allowability and the patent was issued as the '585 patent. ECF No. 38 at 2. Flyp filed its First Amended Complaint ("FAC") on January 4, 2022, adding an allegation that Dialpad has and continues to infringe, contribute to the infringement of, and/or induce infringement of Flyp's '585 Patent. ECF No. 29 ¶ 70.

On January 18, 2022, Dialpad filed its Answer and Counterclaims to Flyp's FAC (the "Second Answer") re-alleging its denials and counterclaims in its Original Answer and Counterclaims and also denying infringement of the '585 Patent. ECF No. 34 ¶ 70. Specifically, Dialpad asked the Court to declare that it had not infringed the '585 Patent and that the patent was invalid. ECF No. 34 ¶¶ L, M. Additionally, in its Second Answer, Dialpad asserted an affirmative defense that Flyp's claims of infringement of the '585 Patent are unenforceable due to purported inequitable conduct by Flyp during the patent's prosecution before the United States Patent and Trademark Office (the "USPTO"). *Id.* at 49. Dialpad's counterclaim for declaratory judgment of unenforceability due to Flyp's alleged inequitable conduct followed. *Id.* at ¶¶ 75–94.

According to Dialpad, Flyp failed to disclose the current litigation and invalidity claim charts to the examiner of the '585 Patent, violating its duties of disclosure, candor, and good faith. *Id.* at ¶ 72.

Immediately after Flyp filed its Original Complaint, it filed a Notice of Filing of Patent/Trademark Form AO 120 (the "First Notice"), putting the Court on notice that Flyp had filed the required form with the USPTO the same day it filed suit against Dialpad. ECF No. 3. And, immediately after Flyp filed its FAC, it filed a second Notice of Filing of Patent/Trademark Form AO 120 (the "Second Notice"), putting the Court on notice that Flyp had once again filed the required form with the USPTO just one day after it amended its Original Complaint. ECF No. 31. In its first Notice, Flyp informed the USPTO that it was suing Dialpad in the Western District of Texas concerning the '770, '105, '094, and '554 Patents. ECF No. 3. In the Second Notice, Flyp informed the USPTO that it was now also suing Dialpad concerning the '585 Patent. ECF No. 31.

Flyp filed the current Motion on February 28, 2022, claiming that it had properly disclosed the current litigation to the USPTO and that it had no obligation to disclose the invalidity claim charts to the USPTO because those charts were cumulative of the already disclosed prior art. ECF No. 38 at 1. According to Flyp, Dialpad fails to state a plausible claim of inequitable conduct because Flyp made the necessary disclosures and Dialpad's pleadings are conclusory and insufficient. *Id.* Further, Flyp claims that Dialpad reads the Manual of Patent Examining Procedure § 2001.06(c) to be broader than it is and that the USPTO expressly rejected a rule requiring applicants to disclose claim charts. *Id.* Defendant responded, alleging that its pleadings were not conclusory and that Flyp misinterprets the requirements of MPEP § 2001.06(c). ECF No. 39.

3

## II.    LEGAL STANDARD

### A. 12(b)(6) Failure To State a Claim

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must liberally construe the complaint in favor of the plaintiff and must take as true all well-pleaded facts. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The pleading standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear that this plausibility standard is not simply a "probability requirement," but nonetheless must infer more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

There are "[t]wo working principles" that a court must use in its pleading evaluations. *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that tenet does not extend to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [as they] do not suffice." *Id.* Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, a court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. *Datascape, Ltd. v. Dell Techs., Inc.*, No. 1:19-CV-00605-ADA, 2019 WL 5275533, at *1 (W.D. Tex. June 17, 2019).

4

### B.  Inequitable Conduct

Inequitable conduct bears on an issue unique to patent law. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Thus, the Court applies the law of the Federal Circuit when determining whether inequitable conduct has been pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003).

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the USPTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the USPTO." *Exergen*, 575 F.3d at 1328–29.

The USPTO imposes a duty on "[e]ach individual associated with the filing and prosecution of a patent application" to disclose information material to patentability. 37 C.F.R. § 1.56(a); *see also* M.P.E.P. § 2001.06(c). Specifically, each named inventor, "each attorney or agent who prepares or prosecutes the application," and "every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the

application" owes a duty of disclosure to the USPTO. 37 C.F.R. § 1.56(c). However, the Federal Circuit rejected adopting materiality as it is defined in USPTO Rule 56 because it sets such a low bar. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292, 1295 (Fed. Cir. 2011); 37 C.F.R. § 1.56. Instead, materiality is measured by a "but-for" analysis. *Id.* at 1291. To assess materiality, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* In determining patentability, courts should give claims their broadest reasonable construction, using a preponderance of the evidence standard. *Id.* at 1292. "Information cumulative of other information already before the Patent Office is not material." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007).

"A reasonable inference [of intent] is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5. The inference of deceptive intent must be reasonable and drawn from the pleading's allegations of underlying facts. *Id.* This pleading standard is lower than that required to prevail on the merits. *Id.* (noting that to prevail on the merits, an accused infringer must prove both materiality and intent by clear and convincing evidence, and that the inference must be the *single most reasonable* inference to meet the clear and convincing standard). Importantly, "intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290 (citing *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003)). The two requirements should not fall on a "sliding scale," as a "court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.*

# III.   ANALYSIS

Flyp argues that Dialpad fails to plead the "what," "where," "how," or "why of any alleged inequitable conduct. Additionally Flyp argues that Dialpad fails to plead any facts supporting an inference of intent to deceive. Dialpad disputes any failure to plead and highlights the non-cumulative materiality of the undisclosed invalidity claim charts and litigation to satisfy the "what" and "where." Dialpad also provides its reasons for why Flyp "intentionally hid the litigation and invalidity claim charts from the PTO." ECF No. 39 at 14. Dialpad further relies on those same alleged facts to support the pleading requirements for intent. Underlying each of the parties' arguments is a preliminary question of materiality; specifically, whether the USPTO would have allowed the claims of the '585 Patent had Flyp disclosed the invalidity claim charts or litigation. The Court begins with the preliminary questions of disclosure and materiality, followed by an analysis of the who, what, when, where, and how of the undisclosed materials, and ending with an assessment of the factual allegations that do not support an inference knowledge or specific intent to deceive.

## A.   Failure to disclose the Litigation or Invalidity Claim Charts generally does not meet the but-for materiality test.

Dialpad alleges that the suit filed against it by Flyp on June 21, 2021 (the "Litigation"), was not disclosed to the USPTO. ECF No. 34 ¶ 81. Flyp contends otherwise. It is undisputed that Flyp filed an AO 120 Form with the USPTO the very same day it filed suit against Dialpad. ECF No. 38 at 1; ECF No. 3. At the top of the form, a blank space is left for a party to fill in the court where an action has been filed: "In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ on the following . . ." ECF No. 38-1. Underneath this portion of the form a party can check a box for "Trademarks" or "Patents." *Id.* In the blank, Flyp typed

in "Western District of Texas" and then checked the box for "Patents." *Id.* Flyp then goes on to identify itself as the plaintiff in the suit and Dialpad as the defendant. *Id.* Flyp listed each of the patents involved in the suit—the '770, '105, '094, and '554 Patents—and identifies itself as the holder of these patents. *Id.* The form appears in the file histories of the '770, '105, and '554 Patents. For one reason or another, it does not appear in the file history of the '094 Patent. ECF No. 38 at 7 n.2. Nor does the form appear in the prosecution history of the '585 Patent. ECF No. 39 at 9–10.

Flyp maintains that because the same examiner, Nam Trung Huynh, was assigned to the prosecution of the other four patents and to the '585 Patent, he was surely aware of the ongoing litigation. ECF No. 38 at 7–8. Despite Flyp's contention, Flyp presents no concrete evidence that the examiner was aware of the connection between this litigation and the '585 Patent. In a footnote of its Motion, Flyp claims that it informed the examiner of the ongoing litigation in at least one phone call. *Id.* at n.4. But Flyp offers nothing to substantiate this claim and presents nothing that would allow the court to definitively say the examiner knew of the litigation's relevance to the '585 Patent. Thus, this is a disputed fact that must be resolved in the pleading party's favor. *Leatherman*, 507 U.S. at 164 (recognizing that a Court must take as true all well-pleaded facts). As to the invalidity claim charts attached to Dialpad's response, *see* ECF No. 39-2 (the "Invalidity Claim Charts"), both parties agree the underlying prior art was disclosed while the charts were not.

Upon reply, Flyp argues that Dialpad does not contend the mere existence of the Litigation was material to patentability in this case. Thus, even if a factual dispute regarding disclosure of the litigation remains, any alleged lack of disclosure is immaterial; or at the very least, Dialpad fails to plead its materiality. Flyp similarly argues that Dialpad failed to identify

particularly specific portions of the Invalidity Claim Charts that were material to the '585
Patent's patentability. Dialpad relies on the language of the Manual of Patent Examining
Procedure, which states in part:

> In particular, material information that is raised in trial proceedings
> that is relevant to related applications undergoing examination
> should be submitted on an Information Disclosure Statement for
> the examiner's consideration. Examples of such material
> information include evidence of possible prior public use or sales,
> questions of inventorship, prior art, allegations of "fraud,"
> "inequitable conduct," and "violation of duty of disclosure."
> Another example of such material information is any assertion that
> is made during litigation and/or trial proceeding which is
> contradictory to assertions made to the examiner. *Environ Prods.,*
> *Inc. v. Total Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa.
> 1997). Such information might arise during litigation and/or trial
> proceeding in, for example, pleadings, admissions, discovery
> including interrogatories, depositions, and other documents and
> testimony.

MPEP § 2001.06(c). Dialpad cites two cases for support that failure to disclose litigation is
material to patentability. ECF No. 39 at 6. Dialpad relies on *Leviton Manufacturing Co. v.*
*Universal Security Instruments, Inc.*, 606 F.3d 1353 (Fed. Cir. 2010), and *Nilssen v. Osram*
*Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007), each of which found inequitable conduct for
failure to disclose litigation.

Flyp argues that neither of the cases apply as they both predate *Therasense* "which
expressly limited inequitable conduct claims 'in order to redirect a doctrine that has been
overused to the detriment of the public.'" ECF No. 42 (quoting *Therasense*, 649 F.3d at 1290).
Per Flyp, *Nilssen* used a "sliding-scale analysis" which was expressly overruled as *Therasense*
required an independent showing of intent and materiality; and *Leviton* is "distinguishable
because it involved the nondisclosure of litigation where there had been claims of

unenforceability," whereas this case only has ordinary prior art invalidity claims at issue. *Id.* at 6–7.

The United States District Court for the District of Minnesota addressed similar facts post-*Therasense* and *Exergen*, ultimately determining that the defendants adequately pleaded inequitable conduct for failure to disclose the existence of prior litigation or claim charts. *See Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. 12-cv-1200, 2013 WL 2455979 (D. Minn. June 6, 2013). The court reviewed *Nilssen*, *Leviton*, and *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290–92 (Fed. Cir. 2012), a case cited by the plaintiff for the proposition that the Federal Circuit had rejected the existence of related litigation alone was sufficient to support a claim of inequitable conduct. *Cutsforth*, 2013 WL 2455979, at *6. The court concluded that *Travel Caddy* did not overrule *Nilssen* nor *Leviton*, specifically because the Federal Circuit reversed the district court and found no inequitable conduct as litigation *without claims of invalidity* alone is not material to patentability. *Id.* To reiterate, the Federal Circuit noted that because no grounds of invalidity in the litigation existed during the pendency of the application, nothing material to patentability was withheld. *Id.* Thus, *Cutsforth* determined that a failure to disclose litigation could not be categorically denied as inequitable conduct.

Unlike *Travel Caddy*, in *Cutsforth*, invalidity claims existed at the time of the prosecution of the allegedly unenforceable patents. Therefore, *Cutsforth* concluded that:

> Defendants have alleged that during the prosecution of [the patents], [plaintiff] failed to disclose to the USPTO that the potential invalidity of the related [patents] had been asserted in the 2007 Litigation. Defendants' allegations are sufficient to state a claim under MPEP § 2001.06(c), *Nilssen*, *Leviton*, and *Travel Caddy*. MPEP § 2001.06(c) requires that "the existence of such [related] litigation and any other material information arising therefrom" to be brought to the attention of the USPTO.

*Id.* at 7. Ultimately, *Cutsforth* determined that failure to disclose litigation and claim charts amounted to inequitable conduct at the pleading stage.

This Court believes that *Cutsforth* skipped a critical analytical step—determining whether the litigation and claim charts meet the "but-for materiality" test. *Cutsforth's* pleadings may have incidentally met such a standard, but *Cutsforth's* reliance on the language of MPEP § 2001.06(c) seems to directly contradict the rationale and "but-for" test provided in *Therasense*. *See Therasense*, 649 F.3d at 1296 ("On remand, the district court should determine whether the USPTO would not have granted the patent but for Abbott's failure to disclose the EPO briefs."); *see also Prowess, Inc. v. RaySearch Lab'ys, AB*, 953 F. Supp. 2d 638, 651 (D. Md. 2013) ("But the MPEP is not binding on this Court, and the Federal Circuit has expressly declined to adopt Rule 56 as a definition for inequitable conduct."). Thus, the test is not simply if the objectionable lack of disclosure is material under MPEP § 2001.06(c) or § 1.56(a), but "whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* at 1291; *see also Travel Caddy*, 695 F.3d at 1291 ("However, the issue was not whether the '992 litigation was irrelevant; the issue was whether the existence of the '992 litigation was material to patentability of the '104 application, when there was no citation of prior art, nor any pleading of invalidity or unpatentability in the '992 complaint as it existed during pendency of the '104 application."). Having found that a failure to disclose litigation or invalidity claim charts alone does not automatically meet the threshold pleading standard for inequitable conduct, the Court looks to the sufficiency of the pleadings for the "specific who, what, when, where, and how" of material omission committed before the USPTO. *Exergen*, 575 F.3d at 1327.

### B.  Dialpad's pleadings lack the necessary specificity.

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the

11

material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). "Most pleadings successfully allege 'who' was responsible for misleading the USPTO and 'when' the alleged acts occurred. The 'what' and 'where' requirements pose the greater challenge." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 981 (D.N.M. 2016). The same can be said in this case.

### 1. The "who" is properly pleaded.

Inequitable conduct pleadings must identify specific individuals that owed a duty of candor to the PTO and breached that duty. *See Exergen*, 575 F.3d at 1329. Dialpad clearly identifies at least two individuals who allegedly failed to make the proper disclosures to the USPTO; namely, Peter Rinfret and Stuart West (the "Flypsi Patent Prosecutors"). ECF No. 34 ¶¶ 75–79. According to Dialpad, as the inventor and prosecutor, respectively, these two individuals are the individuals responsible for the inequitable conduct. *Id.*

First, Dialpad alleges that Peter Rinfret—Flyp's CEO and inventor of the '770, '105, '094, and '554 patents—was aware of the litigation and, on information and belief, was also aware of the claim charts that were produced during the course of this litigation. *Id.* ¶¶ 76, 78, 79. Next, Dialpad asserts that Stuart West, the prosecuting attorney for the '585 patent was aware of the ongoing litigation and the claim charts and had spoken with the USPTO on a number of occasions about the '585 patent without providing any context about this litigation or the invalidity claim charts' potential impact on the validity of the '585 patent. *Id.* ¶¶ 77–79. Dialpad has sufficiently pleaded the "who" element for its claim of inequitable conduct against Flyp.

### 2. The "when" is properly pleaded.

It is undisputed that the when is sufficiently pleaded. *See generally* ECF No. 38. According to Dialpad, Flyp should have disclosed the litigation to the examiner of the '585 patent while the prosecution of the patent was still ongoing. *Id.* ¶ 88. Dialpad contends that "the

activity that gave rise to the Flypsi Patent Prosecutors' inequitable conduct began on June 21, 2021" because that is the date the suit was filed. *Id.* Dialpad alleges that "[a]fter this Litigation commenced, the Flypsi Patent Prosecutors could have alerted the USPTO to it during the prosecution of the '585 Patent." *Id.* Dialpad also alleges that Flyp should have disclosed the Invalidity Claim Charts it received in the litigation to the USPTO during prosecution of the '585 Patent. *Id.* ¶ 90. Dialpad has sufficiently pleaded the "when" of its inequitable conduct claim and defense.

### 3. The "what" and "where" are inadequately pleaded.

The "what" and "where" elements of the pleading require identification of "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329. For reference, Dialpad's pleadings state the following under the header, "*Inequitable Conduct – What*":

> 80.  37 C.F.R. § 1.56 and specifically MPEP 2001.06(c) require: "Where the subject matter for which a patent is being sought is or has been involved in litigation and/or a trial proceeding, or the litigation and/or trial proceeding yields information material to currently pending applications, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner or other appropriate official at the U.S. Patent and Trademark Office."
>
> 81.  The Flypsi Patent Prosecutors identified in paragraph 81 above, individually or collectively, withheld material, non-cumulative information from the USPTO during prosecution of the '585 Patent. Specifically, this Litigation and fact that the prior art references submitted to the USPTO were produced in litigation mere days earlier and were part of an extensive set of Invalidity Claim Charts associated with the the ongoing litigation involving members of the '585 Patent family, namely the '770, '105, '094 and '554 Patents should have been identified to the PTO.
>
> 82.  The Invalidity Claim Charts identified many patent references that were not of record, and laid out claim charts demonstrating where each element and limitation of the

'770, '105, '094, and '554 Patent claims are found in the Invalidity Contention Prior Art. Below are references charted and cited in the claim charts and invalidity contentions, for the '554 Patent showing anticipation and obviousness positions for the Invalidity Contention Prior Art that Flpysi disclosed without disclosing the Invalidity Claim Charts or the Invalidity Contentions. There are nine separate lengthy charts labeled D-1 through D-9 that were produced mapping all of the claim elements and limitations of claims 1-4 of the '554 Patent to each of the references shown below in the first chart. None of these prior art references was previously before the USPTO, and all of the charted references below were disclosed in an IDS without the corresponding Invalidity Claim Charts.

*  *  *

84.   The Invalidity Claim Charts were material and highly relevant to the claims of the '585 Patent. The Flpysi Patent Prosecutors, individually or collectively withholding information about This Litigation and the Invalidity Claim Charts violates 37 C.F.R. § 1.56 and MPEP 2001.06(c) and constitutes inequitable conduct.

85.   The circumstances indicate that the intent of the Flypsi Patent Prosecutors, individually or collectively, was to file at the USPTO the Invalidity Contentions Prior Art with no context on the litigation or the Invalidity Charts, in order to quickly get the '585 Patent to issue and then subsequently add the '585 Patent into This Litigation.

ECF No. 34 ¶¶ 80–82, 84–85.

First and foremost, Dialpad's materiality arguments are not directed towards but-for materiality, as required, but instead rely on the materiality standards referenced in 37 C.F.R. § 1.56 and MPEP 2001.06(c). *See Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *3 (E.D. Tex. Dec. 13, 2011), *report and recommendation adopted*, No. 6:10-CV-379-LED-JDL, 2012 WL 12893881 (E.D. Tex. Jan. 18, 2012) ("Thus, a pleading that does not show but-for materiality or that bases intent solely on the materiality of the withheld reference would be [*sic*] not survive the pleading stage."). Still, the

pleadings do not incidentally meet the but-for pleading threshold. For example, while failure to disclose litigation, with sufficient underlying facts, could potentially meet the requisite but-for materiality standard, Dialpad simply pleads that the Flypsi Patent Prosecutors "withheld material, non-cumulative information from the USPTO," including "this Litigation" and "an extensive set of Invalidity Claim Charts associated with the the [*sic*] ongoing litigation." This language alone is conclusory. *See Rambus, Inc. v. STMicroelectronics N.V.*, No. C 10-05449, 2013 WL 12343708, at *4 (N.D. Cal. Mar. 18, 2013) (finding that statements that the withheld references "are material to the patentability" of the asserted patents was insufficient because the pleadings "[did] not identify the particular claim limitations, or combination of claim limitations, that were supposedly absent from the information of record. Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.") (internal citations omitted).

With more specificity, Dialpad alleges that the specific claim charts D-1 through D-9 should have been disclosed to the USPTO because the charts mapped "all of the claim elements and limitations of claims 1–4 of the '554 Patent to each of the references" contained in the corresponding chart. ECF No. 34 ¶ 82. Dialpad also provides a chart comparing the claims and limitations between the '554 and '585 Patents to note their similarity. However, despite Dialpad's "specificity" as to the '554 Patent, it fails to note the particular limitations within claim 1 of the '585 Patent, much less map the claims or limitations of claims 2–4 of the '585 Patent. *See Rambus*, 2013 WL 12343708, at *4 (denying motion for leave to amend and add an inequitable conduct defense as futile); *Prowess*, 953 F. Supp. 2d at 651 ("Defendants have not identified which patent claims the references are relevant to, or which claim limitations are

absent from the information of record."); *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, 2012 WL 12898419, at *4 (E.D. Tex. Sept. 27, 2012) (holding that references to every claim and every limitation of the claims was sufficient, but finding that alleging relevance to claims 1–74 without identifying specific claim limitations, or even asserting all limitations within claims 1–74, did not meet the pleading standards); *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, No. 09-C-948, 2012 WL 1952977, at *7 (E.D. Wis. May 29, 2012) ("Although the defendants may have intended to allege that all of the independent and dependent claims in the '173 and '510 patents are rendered invalid, they do not specifically say so and the court will not take it upon itself to insert assumptions into the pleadings.').

Importantly, Dialpad may have enough to map the prior art to specific claims and limitations in the '554 Patent, but Dialpad fails to identify the particular claims and limitations of the '585 that would not have been allowed had the Invalidity Claim Charts or Litigation been disclosed. Any specificity in Dialpad's pleadings is directed to the wrong claims and limitations. Dialpad's allegations in ¶ 83 of its counterclaims, wherein it provides a side by side of claim 1 of the '554 Patent and '585 Patent and states the claims have "very similar claim elements and limitations, also fail to cure the deficiency. And if Dialpad believes that referring the Court to its 125-page Invalidity Claim Charts is sufficiently specific, it is sorely mistaken. *See Rambus*, 2013 WL 12343708, at *3 ("The fact that the required information may exist *somewhere* in the record in no way excuses [defendant] from its obligations under Rule 9(b) to plead that information specifically in its answer.") (emphasis in original); *see also In re Oracle Corp.*, 627 F.3d 376 (9th Cir. 2010) ("It behooves litigants, particularly in a case with a record of this magnitude, to resist the temptation to treat judges as if they were pigs sniffing for truffles."). Moreover, the

specificity must arise between the undisclosed materials and allegedly unpatentable claims and particular limitations. Comparing the '554 Patent to the '585 Patent is the wrong test.

      i.   <u>Courts are mixed on whether such withheld information could amount to be material.</u>

Admittedly, some courts have accepted pleadings without the requisite particularity, finding that allegations of failure to disclose invalidity claim charts or litigation generally sufficiently met the pleading standard. *See generally Cutsforth*, 2013 WL 2455979, at *7 (finding inequitable conduct sufficiently pleaded under a theory of failing to disclose invalidity claim charts and prior litigation); *see also Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 5061812, at *2 (E.D. Tex. Dec. 14, 2009) (finding that defendants met the "what" and "where" requirements by incorporating invalidity charts); *Eon*, 2011 WL 13134896, at *4 ("Defendants incorporated a claim chart outlining the applicability of the allegedly withheld piece of prior art, the [asserted patent], on a claim-by-claim and limitation-by-limitation basis."); *Mosaid*, 2012 WL 12898419, at *4 (finding that pleading a specific feature practices every limitation of a list of claims was sufficient); *Lincoln Nat. Life v. Transamerica Fin. Life Ins. Co.*, No. 1:08-CV-135, 2009 WL 4547131, at *3 (N.D. Ind. Nov. 25, 2009) (holding that the pleading adequately stated the "what" because "defendants claim that all five references are relevant to Claim 1, and potentially all limitations, of the [asserted patent]"); *Nobelbiz, Inc v. Glob. Connect, L.L.C.*, No. 6:12-CV-244-MHS, 2014 WL 11497796, at *4 (E.D. Tex. Oct. 27, 2014) (finding that failure to disclose claim charts was sufficient to deny a motion to dismiss inequitable conduct claims); *Venetec Inter., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 619 (D. Del. 2008) (finding that allegations of failure to notify the USPTO of litigation and invalidity contentions was sufficient alone).

Nonetheless, material differences exist between these cases and the pleadings at hand. As previously noted, *Cutsforth* addressed but-for materiality relying on § 1.56 and MPEP § 2001.06(c). In *Konami*, the court stated that the "what" and "where" were met because the pleadings identified "charts of potentially invalidating [] prior art games—on a claim-by-claim and limitation-by-limitation basis." 2009 WL 5061812, at *2. Additionally, the Court cited the answer and its attached exhibits with the claim charts. *Eon* contained more specificity as the defendants "incorporated a claim chart outlining the applicability of the allegedly withheld piece of prior art, the [initial patent], on a claim-by-claim and limitation-by-limitation basis." Here, Dialpad failed to incorporate or attach its invalidity contentions. *Mosaid* permitted pleadings identifying numerous claims with references to every limitation. 2012 WL 12898419, at *4. However, *Mosaid* rejected pleadings that identified 74 claims without alleging either a particular limitation or that every limitation was invalid. *Id. Lincoln* contained allegations addressing the specific claim and "possibly all limitations" was enough. 2009 WL 4547131, at *3. But even more specifically, Defendant's expert report revealed particular features material to the asserted patent and its claims. *Id. Noblebiz* also identified particular information contained in the claim charts but not before the USPTO, namely a certain system and explanation of its public use. At summary judgment, the court even noted that the claim was "not particularly compelling." *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *5 (E.D. Tex. July 16, 2015). Finally, *Venetec* was decided before either *Exergen* or *Therasense* and did not apply the but-for materiality test. Instead, *Venetec* found that the litigation and invalidity contentions were material under 37 C.F.R. § 1.56 and MPEP 2001.06(c). Even were these the correct test, similar particularity is absent in Dialpad's pleadings.

ii.   The Court does not suspect that the Litigation and Invalidity Claim Charts are material in and of themselves.

For the case at hand, *Milwaukee* contains analogous facts. In *Milwaukee*, the court identified similar deficiencies, stating:

> Additionally, although the [allegedly unenforceable patents] are substantially similar to the [initial patent], they are not identical. Whether or not the additional limitations are important will not be explored by the court for the purposes of this motion. However, such differences may render the descriptions included in Appendix A to the defendants' Invalidity Contentions inapplicable to the [allegedly unenforceable patents]. Thus, merely relying on the reasons articulated in the Invalidity Contentions as to anticipation and/or obviousness of claims 1, 6, and 8–10 of the [initial patent] does not sufficiently explain where in each item of prior art the elements of the claims of the [allegedly unenforceable patents] are found. Thus, the defendants pleading is insufficient with regard to the "what" and "where" requirements of the *Exergen* test.

2012 WL 1952977, at *7 (citations omitted). Here, even if the patents and claims are similar between the initial patent (the '554 Patent) and the allegedly unenforceable patent (the '585 Patent), Dialpad fails to plead the particular claims or limitations of the '585 Patent impacted by the prior art with specificity. And again, a mere comparison between the '554 Patent and '585 Patent is the wrong analysis.

Additionally, the Court is apprehensive to find but-for materiality as the USPTO granted the '585 Patent with the benefit of the disclosed underlying prior art. It is unlikely that any information Dialpad purportedly relies on in the Invalidity Claim Charts is not cumulative of the information undisputedly disclosed to the USPTO. Dialpad must identify, with specificity, particular portions of its Invalidity Claim Charts that, had they been disclosed, would have precluded the USPTO from granting the '585 Patent. Simply pointing to the prior art has already proven insufficient. More must be done. *See also Pixion, Inc. v. Citrix Sys., Inc.*, No. C 09-03496-SI, 2012 WL 1309170, at *4 (N.D. Cal. Apr. 16, 2012) (denying leave to amend and add

claims of inequitable conduct even when the invalidity charts were submitted to the USPTO as the underlying references appeared in the cited references of the allegedly unenforceable patents); *see also Front Row*, 163 F. Supp. 3d at 985 (noting that a failure to disclose prior art does not generally rise to the level of inequitable conduct and that "[p]leading inequitable conduct based on nondisclosure of prior art and other misconduct requires specific allegations focused on the USPTO's decisions.").

"If the parties alleging inequitable conduct fail to cite specific claims in specific patents 'that would be deemed unpatentable in light of undisclosed information,' they have failed to allege materiality." *Front Row*, 163 F. Supp. 3d at 986 (quoting *Milwaukee*, 2012 WL 1952977, at *8). Pleadings must include facts "showing that 'the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim.'" *SAP Am., Inc. v. Purple Leaf, LLC*, No. C 11-4601 PJH, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012) (citing *Therasense*, 649 F.3d at 1292). Here, the Court finds it unlikely that non-cumulativ einformation beyond boilerplate language and parroted claim language from the purported prior art exists within the Invalidity Claim Charts. If it exists, Dialpad must specifically plead what was missing and "that the PTO would have acted differently" with the missing disclosures. *Id.*

### 4. The "how" and "why" are inadequately pleaded.

"A party pleading inequitable conduct must explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Front Row*, 163 F. Supp. 3d at 983 (quoting *Exergen*, 575 F.3d at 1329) (internal quotation marks omitted). Given Dialpad's failure to plead the particular "what" and "where," it cannot plead the "how" or "why." Any references to the litigation alone are entirely conclusory. As to the failure to disclose the Invalidity Claim Charts, Dialpad alleges that the failure to disclose was "in hopes that the USPTO would issue patents

with file histories that would include the prior art from the Invalidity Claim Charts and that the USPTO would issue the patents without realizing the detailed arguments included in This Litigation and those Invalidity Claim Charts." ECF No. 34 ¶ 94. But without understanding the underlying material information, i.e., the specific claims and claim limitations, Dialpad cannot sufficiently plead "why" the information was material or "how" it would have impacted the USPTO's decision to grant the '585 Patent. *See SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2010 WL 3860129, at *3 (E.D. Tex. Sept. 9, 2010), *report and recommendation adopted*, No. 2:07-CV-497-TJW-CE, 2010 WL 3860154 (E.D. Tex. Sept. 28, 2010) (holding that the identity of particular claim limitations, or combination of claim limitations, supposedly absent from the record are "necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.").

## C.  Knowledge and Intent

Were Dialpad to properly plead the who, what, when, where, why, and how of its inequitable conduct claim, it would also need to plead scienter of the withheld material information and that the information was withheld with a specific intent to deceive the USPTO. *Exergen*, 575 F.3d at 1328–29. Dialpad cites to ¶ 87 of its counterclaims to show that it "alleged and Flypsi has confirmed that Flypsi prevented the '585 patent from issuing solely for the purpose of disclosing the prior art cited by the Invalidity Claim Charts to the PTO." ECF No. 39 at 15.   Dialpad also contends that it alleges that Flyp never disclosed the Litigation or its invalidity contentions including the Invalidity Claim Charts to the USPTO. These facts, per Dialpad, "should lead the Court to reasonably infer that Flypsi withheld information to deceive the PTO." *Id.* at 16.

Dialpad makes the same error here as it did earlier—Dialpad fails to identify the specifically material information. Furthermore, Dialpad's argument that the information was material and therefore its omission was intentional directly contradicts the Federal Circuit's mandates in *Therasense.* "Intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1276. "[A] district court may not infer intent solely from materiality. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.*

Dialpad notes a series of events consisting of three points that are "incredible" to support an inference of intent to deceive. First, Dialpad argues that it is incredible Flypsi would "receive prior art references and a roadmap as to how those references invalidate the claims of '770, '105, '094, and '554 patents." ECF No. 39 at 16. Second, it is incredible that Flypsi would "prevent the related application that led to the '585 patent from issuing just to submit the prior art references it had received in hopes that the PTO would not find a way to invalidate the pending claims based on those references." *Id.* And last, it is incredible that Flypsi would "***think it was okay to not share Dialpad's invalidity claim charts—the roadmap to using the invalidating references—with the PTO***." *Id.* (emphases in original). But this is *exactly* what the Federal Circuit cautioned against: "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. Even after scouring Dialpad's pleadings, the Court is unable to identify a single factual allegation relevant to intent separate from Dialpad's deficient allegations of materiality. Thus, Dialpad fails to adequately allege knowledge of the material information withheld or a specific intent to deceive.

## IV.    CONCLUSION

It is therefore **ORDERED** that Plaintiff Flypsi, Inc.'s Motion to Dismiss and Strike Defendant's Inequitable Conduct Counterclaim and Defense is hereby **GRANTED**.

Accordingly, Dialpad's counterclaim of inequitable conduct and inequitable conduct defense are **STRICKEN**.

**IT IS FURTHER ORDERED** that Defendant is **GRANTED** leave to amend its pleading within fourteen (14) days of entry of this Order. However, the Court cautions Defendant against filing futile amendments given the foregoing analysis.

SIGNED this 22nd day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE