**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **Flypsi, Inc.,** *Plaintiff* | § § § § § § § § § | **6:21-CV-00642-ADA** |
| -vs- | | |
| **Dialpad, Inc.,** *Defendant* | | |

## CLAIM CONSTRUCTION ORDER

Came on for consideration the parties' claim construction briefs: Plaintiff Flypsi, Inc.'s ("Flyp" or "Plaintiff") opening and reply briefs (ECF Nos. 26 and 37, respectively), and Defendant Dialpad, Inc.'s ("Dialpad" or "Defendant") opening and reply brief (ECF Nos. 24 and 33, respectively). The Court provided the parties its preliminary constructions in advance of the *Markman* hearing. After review of the briefing and oral arguments, the Court maintains its preliminary constructions and assigns each of the disputed terms its plain and ordinary meaning.

### I.   BACKGROUND

Flyp filed this lawsuit alleging that Dialpad infringed the following patents: U.S. Patent Nos. 10,334,094 (the "'094 patent"), 10,051,105 (the "'105 patent"), 11,012,554 (the "'554 patent"), 11,281,585 (the "'585 patent"), and 9,667,770 (the "'770 patent"), (collectively, the "Asserted Patents"). ECF No. 1 (the "Complaint"). These patents and asserted claims generally relate to a method for providing inbound and outbound telephone services using multiple phone numbers on a single device while also maintaining caller-identification protections. ECF No. 26 at 4–5.

1

## II. LEGAL STANDARD

The general rule is that claim terms are given their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [this] general rule" are when the patentee (1) acts as their own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as its own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id.* at 1366. When "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the

intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can also be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

Generally, a term is indefinite if the challenger of the term can prove, by clear and convincing evidence, that the term would not apprise a person of ordinary skill in the art of the scope of the claim. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898–99 (2014). A term may also be defined in terms of means-plus-function if a term lacks specific structure by its language (e.g., a nonce word like "mechanism" or "module") or if a function is listed without an accompanying term that provides sufficient structure. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). When a term is defined under means-plus-function, it is indefinite if the patent does not properly specify the structure which performs the function and sufficiently tie the structure to that function. *Id.* at 1350.

### III. ANALYSIS

#### A. "Primary Telephone Number"

| Dialpad's Proposed Construction | Flyp's Proposed Construction |
|---|---|
| A telephone number or identifier that is assigned to a handset or mobile device. | Plain and ordinary meaning. |

3

Defendant argues for a specific construction of "primary telephone number," claiming that without a specific definition, the plain and ordinary meaning of "primary telephone number" is indistinguishable from the meaning of a "secondary phone number." ECF No. 33 at 2. Per Defendant, conflation of the terms is inconsistent with the specification's use of the terms in a manner that carefully distinguishes between "primary" and "secondary" phone numbers. *Id.* at 3. Finally, Defendant points out the repetition and consistent usage of the terms at issue and cites authority for the proposition that if a phrase is repeatedly used in a certain way, it is proper to construe the claim term "in accordance" with that characterization. ECF No. 33 at 3.

Plaintiff counters that, especially after the modification of the proposed construction, the proposed definition would conflate the meanings of primary telephone number and secondary telephone number more than a plain and ordinary meaning. ECF No. 26 at 11. In other words, the plain and ordinary meanings of primary and secondary telephone numbers naturally contrast with each other. So long as "telephone number" is understood, a reasonable juror can distinguish between a "primary" and "secondary" telephone number by plain meaning. If this Court were to construe only the term "primary telephone number" without construing "secondary telephone number," a jury member may assume unwarranted distinctions between the two. This is even more of an issue after Defendant amended its proposed construction and removed the words "at activation," which renders the phrase so abstract that it would now confuse members of the jury. *Id.* at 2. Thus, per Plaintiff, the meanings of these terms become more confusing with a technical construction rather than plain and ordinary meanings.

The Court finds that the term "primary telephone number" should have its plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it. Defendant has failed to illustrate that a person of ordinary skill in the art would not know the meaning of this

term. This term does not fit the exceptions of lexicography or disclaimer to warrant a departure from the plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. The lexicography exception does not apply because the specifications do not define, clearly demonstrate an intent to implicitly define, or otherwise limit the term to a degree that would make this Court ascribe a certain meaning to those terms.

While the patent does refer to the terms at issue repeatedly and consistently, that is not the inquiry when deciding whether a term needs construction. In the cases Defendant cites to support this contention, neither party was arguing for use of a term's plain and ordinary meaning. *See, e.g.*, *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014); *ICU Med., v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009); *GPNE Corp. v. Apple, Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016). In other words, the issue was not *whether* a claim needed construction, but *what* that construction should be given the parties disputes. While repeated and consistent use may influence how a term should be defined, it does not bear on whether the presumption of plain and ordinary meaning has been overcome in the first place. Thus, Defendant's argument finds itself without support.

Moreover, this term is not difficult or too technical in nature such that a construction would aid the jury in understanding. *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). It is not necessary to distinguish primary and secondary telephone numbers through construction because these phrases will likely be understood by a person of ordinary skill in the art and the jury will likely not be confused by the terms. Accordingly, the term "primary telephone number" is given its plain and ordinary meaning.

B. "Voice Channel"

| Dialpad's Proposed Construction | Flyp's Proposed Construction |
|---|---|
| A communications path used for voice information and voice calls. | Plain and ordinary meaning |

Defendant argues that the patent contains both explicit and implicit lexicography for the purposes of the term "voice channel." ECF No. 33 at 3–4. Defendant points to language from the specification that it claims acts as express definitional language for the term "voice channel," which contrasts with other language defining a "data channel." *Id.* at 4. Specifically, Defendant points to the statement that:

> CDMA, GSM or like governed communication, when used to carry voice information, are referred to here as being conducted over a 'voice channel.'" Conversely, when IP is used as the protocol rather than CDMA, GSM, or the like, such communications are referred to in the specification as being conducted over a "data channel."

'770 Patent, at 4:35–46. In Defendant's view, this is definitional language for the term "voice channel," requiring that this Court respect the patent specification's internal definition of "voice channel" rather than a plain and ordinary meaning. *Id.* Further, Defendant argues that the frequent statements in the specification that "calls" are made using "voice channels" serves to implicitly reinforce this internal definition for the term at issue. *Id.* In support of this argument, Defendant cites a fair amount of authority to reiterate that a patentee does not need to explicitly or formally define a term to act as lexicographer, but rather may do so implicitly. *Id.* at 5 (citing *Trs. Of Columbia Univ. in the city of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016), and *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004)).

Plaintiff contends "voice channel" should be given its plain and ordinary meaning. ECF No. 26 at 12. Furthermore, nothing about the term "voice channel" would be inherently

confusing for a jury or a reasonable person in the field to understand. When "there is nothing about the claim term that is confusing . . . the term requires no construction." *Pisony v. Commando Construction, Inc.*, W-17-CV-00055-ADA, 2019 WL 928406, at *5 (W.D. Tex. Jan. 23, 2019).

Regarding the asserted lexicography, Plaintiff argues that the language pointed to by Defendant is merely exemplary and permissive rather than definitional. ECF No. 37 at 4. In support of this, Plaintiff stresses the patentee's use of the word "may" when referring to the relevant communications and the broad allowance of "like governed standards." *Id.* Finally, Plaintiff argues that if other similar terms in the specification such as "data channel" do not need construction, there is no reason for the phrase "voice channel" to require a specific construction. *Id.* at 3.

Even if the patentee had acted as lexicographer, Plaintiff argues that a person of skill in the art would know that a "voice channel" carries additional data and is generally not limited to voice only. ECF No. 26 at 13. In other words, Defendant's construction of "voice channel" would serve to artificially narrow the scope of the technology beyond how the technology is understood in the art—as carrying both voice *and* data.

Defendant's argument that "voice channel" is defined in the specification is unavailing. That language merely establishes a relationship between "CDMA, GSM or like governed communication" and "voice channel" but does not seek to define or limit the phrase "voice channel" itself. ECF No. 37 at 7. "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must "clearly express an intent" to redefine the term." *Thorner*, 669 F.3d at 1365. Here, Defendant asks the Court to treat the disclosure of exemplary embodiments in the specification—that voice

7

information could be conducted over a voice channel according to certain cellular standards—as a definition. This Court cannot do so. *Id.*

Moreover, the patentee here expressly disclaimed definitional language in the summary of the invention. '770 Patent at 3:35. By the patent's own words, "the following detailed description [is] exemplary and explanatory only, and [is] not restrictive of the invention as claimed." *Id.* The patentee does not merely fall short of—but rather expressly disclaims—the requisite "clear intent" to narrow the scope of the claimed term in the specification. Thus, this patent does not fit the exceptions of lexicography or disclaimer to warrant a departure from the plain and ordinary meaning of the term at issue. Ultimately, the Court agrees that a person skilled in the art would know what the phrase "voice channel" means and the phrase is unlikely to confuse the jury. *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). Accordingly, "voice channel" is given its plain and ordinary meaning.

### C. "Switch" and "Switch… associated with"

| Dialpad's Proposed Construction | Flyp's Proposed Construction |
|---|---|
| Indefinite. | Not indefinite<br>Plain and ordinary meaning. |

Defendant argues that the term "switch" is an indefinite term that invalidates the Asserted Patents. To reach this conclusion, Defendant advances two theories of indefiniteness: the reasonable certainty test under *Nautilus*, and a means-plus-function inquiry invoked under 35 U.S.C. § 112(f).

#### 1. Reasonable Certainty

The test for whether a term is indefinite is whether the patent claim, in light of the specification and prosecution history, fails to inform with reasonable certainty those skilled in

8

the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898–99 (2014).

###### a. "Switch"

Defendant argues that "switch" is indefinite because the claim language fails to specify what type of switch is at issue. ECF No. 33 at 8. While Defendant does not take issue with Plaintiff's establishment of "switch" as a class of structures, it claims that the class identified is too broad. *Id.* And the Plaintiff's failure to attach a specific structure to the term "switch" serves to render the term indefinite. *Id.* To support this contention, Defendant cites to *Dynamic Applet Technologies, LLC v. Mattress Firm, Inc.*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 6816068, at *8 (E.D. Tex. Dec. 27, 2018), quoting language that indicates that a claim's scope is not reasonably certain when it allows a plaintiff to strategically draw boundaries in its analysis of an accused system. *Id.*

Even though the word "switch" can connote different kinds of switches, Plaintiff contends that it has established, through unrefuted evidence, that "switch" connotes a class of structures. ECF No. 37 at 5. In other words, in the Parties' art, "switch" has an understood structural meaning, unlike nonce words like "module" or "mechanism." While the term is broad, Plaintiff cites to comparable cases which demonstrate that great breadth of a structural class does not necessarily render the term indefinite. *Id.*

This Court agrees with Plaintiff. Defendant does not dispute that "switch" connotes a class of structures. Thus, the inquiry is whether that class gives sufficient structural connotation such that a person of ordinary skill in the art would understand how the term structurally limits the claim. *Nautilus*, 572 U.S. at 898–99. Here, Plaintiff has put on a dearth of evidence showing that a person of ordinary skill in the art would know what a "switch" connotes. ECF No. 26 at 2.

As Plaintiff points out, Defendant's mischaracterizes *Dynamic Applet* as well. ECF No. 6. The quoted language that "[T]he claim scope is not reasonably certain because nothing prevents Plaintiff from strategically drawing boundaries in its analysis of an accused system," is that court's characterization of a party's argument, which the court goes on to expressly reject. *Dynamic Applet Technologies*, 2018 WL 6816068, at *8.

In *Skky, Inc. v. MindGeek, s.a.r.l.*, the Federal Circuit faced the issue of whether the similarly broad term "wireless device" connoted structure and found that it did. 859 F.3d 1014, 1020 (Fed. Cir. 2017). The court spelled out, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Id.* at 1019. Here, Plaintiff has sufficiently demonstrated that persons of skill in the art commonly use the word "switch" in a manner that connotes structure. Accordingly, Defendant's argument that "switch" is not structural because the class of structure evoked is too broad is unavailing.

Thus, the term "switch" is not indefinite because Plaintiff has established that "switch" connotes a class of structure that would identify the scope of the claim to a person of ordinary skill in the art.

### b. "Switch… associated with"

Defendant also argues that the term "associated with" when applied to the word "switch" renders the terms indefinite because Plaintiff does not identify or define the associations between the "switch" and the relevant structure. ECF No. 33 at 1.

According to Plaintiff, combined with the structure connoted from the word "switch," a person of ordinary skill in the art would have no trouble understanding the association of that switch to a given system. ECF No. 26 at 20. Relatedly, Plaintiff points out that "associated with"

is not at issue in any other context within the patent. *Id.* If "associated with" does not require construction when attached to other structures, there is no reason the Court should require a construction of the meaning of "associated with" only when it is attached to the word "switch." *Id.*

The Court agrees with Plaintiff. As discussed above, "switch" connotes a class of structures that a person of ordinary skill in the art would understand. While the manner of association may not be exactly defined, the words "associated with" have a common meaning. A person of average skill in the art, knowing what a switch is, would not lose understanding of the structure being referenced simply because that switch became "associated with" another device. Thus, the words "associated with" do not render the patent indefinite when attached to the word "switch."

### 2. *Means-plus-function*

Unless the word "means'" is used regarding the term at issue, a rebuttable presumption arises that the term is not means-plus-function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Defendant argues that the lack of a recitation of definite structure for "switch" is enough to take the word "switch" out of conventional analysis and put it into means-plus-function analysis. ECF No. 33 at 8. Under this analysis, Defendant argues that the word "switch" does not sufficiently define what the switch in question refers to with sufficient structure because "switch" connotes multiple possible structures. Further, "associated with" is a function not properly described or tied to a structure. *Id.* at 9.

Plaintiff asserts that published writings in the art, dictionary definitions, the record, and expert testimony support the conclusion that a person of ordinary skill would understand a "switch" to have *some* structural connotation. ECF No. 26 at 2. In other words, "switch" is not a

11

nonce word only used as a black-box for a method of performing a certain function described in the patent. While a "switch" may come in a variety of forms, breadth does not mean indefiniteness. ECF. No. 37 at 7. In Plaintiff's view, "switch" refers to a class of structure, which is sufficient to render the term definite. *Id.*

As touched on above, "switch" does not lack structure. The other way to trigger a means-plus-function analysis is if there is a function without a listed structure. That is not relevant here. The functions cited by Defendant each implicate a "switch" which sufficiently connotes a structure. Thus, a means-plus-function analysis is not necessary.

This case is akin to *Barkan* out of the Eastern District of Texas. *Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd*, No. 2:18-CV-28-JRG, 2019 WL 497902 (E.D. Tex. Feb. 7, 2019). There, the court found that a "controller" connoted sufficient structure to avoid a means-plus-function analysis. *Id.* at 21. The court recognized that the plaintiff established that "controller" belonged to a class of structures, and found that the defendant failed to tie the term "controller" to an analogous term that failed to connote sufficient structure. *Id.* at 23. Here, the term "switch" is analogous to the term "controller" in that both represent broad and varied classes of structures. Like in *Barkan*, Defendant attempts to tie the term to another case where the term was found indefinite—here, citing *Dynamic Applet*. ECF No. 33 at 8. Dialpad has similarly failed to establish a sufficient connection with *Dynamic Applet* to render the term at issue subject to a means-plus-function analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the terms "primary telephone number" and "voice channel" should have their plain and ordinary meanings that a person of ordinary skill in

the art would ascribe to them. Additionally, the Court finds that the terms "switch" and "associated with" are not indefinite and should have their plain and ordinary meaning.

SIGNED this 22nd day of August, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE